UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PENSCO TRUST COMPANY,<br>a New Hampshire limited liability company,<br>Custodian FBO Karl R. Miller IRA,<br><br>       Plaintiff,<br><br>    v.<br><br>DONALD R. BLEWETT and CARLA BLEWETT, husband and wife, and the marital community comprised thereof, and ROBERT BLEWETT and the marital community comprised of Robert Blewett and Lila Blewett,<br><br>       Defendants. | Case No. 3:12-cv-00338-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

    Currently pending before the Court is PENSCO Trust Company's Motion for Summary Judgment (Dkt. 20). The Court has reviewed the briefing and supporting materials submitted by the parties, and has heard oral argument upon the same.

### BACKGROUND

    This case arises from a loan made in August 2008 from the Individual Retirement Account ("IRA") of Karl Miller. PENSCO Trust Company ("PENSCO") is the current successor custodian of Mr. Miller's IRA account. The full context of the 2008 loan, however, actually dates several years earlier, to July 18, 2006, when a promissory note ("the Moore Note") was executed by Jeffrey A. Moore and Leslie Moore ("the Moores") in the amount of $200,000 for the benefit of Don and Carla Blewett ("the Blewetts"). (Miller Decl. ¶ 5, Dkt. 20-3, Ex. B). The

**Memorandum Decision and Order - 1**

Moore Note pertained to the purchase by the Moores of certain real property located in Yuma County, Arizona. As part of that transaction, the Moores also executed a deed of trust and assignment of rents, in favor of the Blewetts ("the Moore Deed of Trust").  (*Id*. ¶ 6, Ex. C).  The Moore Deed of Trust was recorded on August 11, 2006.  (Walsma Aff., Dkt. 23-3, Ex. A).

On August 7, 2008, the Blewetts borrowed $150,000 from Mr. Miller's IRA account.  As part of that transaction, Don Blewett (for himself and his wife, Carla Blewett) signed a Note Secured by Collateral Assignment ("the Blewett Note"), payable to IRA Resource Associates, Inc. ("IRA Resource").  (Miller Decl. ¶ 4, Ex. A).  Don Blewett's brother Robert Blewett ("Bob Blewett") signed as a guarantor of the Blewett Note.  The "Collateral Assignment of Beneficial Interest" ("First Collateral Assignment"), provided to secure the Blewett Note, was signed by Don Blewett, again for himself and Carla Blewett.  The First Collateral Assignment document describes an assignment to IRA Resource of the Blewetts' interest in the Moore Note and the Moore Deed of Trust described above.  (*Id*. ¶ 6, Ex. D).  The First Collateral Assignment was recorded on September 4, 2008.  (Walsma Aff., Ex. B).

On August 20, 2008, IRA Resource assigned the Blewett Note to PENSCO for the benefit of Mr. Miller's IRA, in the form of "Assignment of Note Secured by Collateral Assignment" ("Assignment of Note").  (Miller Decl. ¶ 7, Ex. E).  IRA Resource also assigned its beneficial interest in the Moore Note and the Moore Deed of Trust to PENSCO as security for the Assignment of Note.  (*Id*. ¶ 8).  The assignment of IRA Resource's beneficial interests was accomplished by a Collateral Assignment of Beneficial Interest ("Second Collateral Assignment").  (*Id*., ¶ 8, Ex. F.)  It was recorded on September 4, 2008.  (Walsma Aff., Ex. C).

**Memorandum Decision and Order - 2**

The Blewetts subsequently made seven payments on the Blewett Note to Mr. Miller's IRA, each in the amount of $1,512.50. The last payment was made on March 17, 2009[1] and the Blewetts have failed to make any payments on the Blewett Note since that date. (McKinley Decl., Dkt. 20-4, Ex. B).

PENSCO has calculated the principal balance owing on Blewett Note as of December 31, 2012 to be $149,375.17, accrued unpaid interest through December 31, 2012 as $69,651.25, and collection fees owing in the amount of $212.50. (*Id.*, Ex. C).

## SUMMARY JUDGMENT STANDARD

A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed,

---

[1] The Moores failed to continue paying the Blewetts on the Moore Note on August 11, 2009 and on December 31, 2009, Don and Carla Blewett and Bob and Lila Blewett accepted a Quit Claim Deed from the Moores for the Yuma County property. In return, the Blewetts released the Moores from their obligations under the Moore Note. (Moore Decl., Dkt. 24-5, ¶¶ 4-5, Ex. C).

**Memorandum Decision and Order - 3**

however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his or her favor.  *See id*. at 256-57.  The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  Statements in a brief, unsupported by the record, cannot create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396, n. 3 (9th Cir. 1995).

**DISCUSSION**

**A.  Choice of Law**

The parties agree that Idaho law applies to the Blewett Note, and the Court concurs.  Idaho law applies to commercial transactions "bearing an appropriate relation to this state."  I.C. § 28-1-301(a).  Furthermore, when a note is silent as to the choice of law, the law of the state in which the instrument is delivered applied.  Restatement (Second) Conflict of Laws §§ 214-15.  The state of delivery is presumed to be the state in which the instrument was dated, which was Idaho in this case.  *Id*., *see also* Miller Decl., Ex. A; Complaint ¶ 3.3.

The parties also agree that to the extent the Arizona real property is at issue, Arizona law would apply to that property.  *See* Restatement (Second) Conflict of Laws § 222.  There is, as a result, the potential for a conflict in applicable law, and in deciding this dispute the Court has examined and decided which law applies to which parts of the pending dispute.

**B.  The Relationship between the Parties to this Case is Governed by UCC Article 9**

The parties disagree as to whether or not Article 9 of Idaho's version of the Uniform Commercial Code applies to the relationship between the Blewetts and PENSCO.  There was extensive argument on this question in the briefing, and during oral argument.

The Court is satisfied that the answer to the question is found in the official comments to Title 28, Chapter Nine, of the Idaho Code, in which an almost identical fact pattern as this case is found:

> O borrows $10,000 from M and secures its repayment obligation, evidenced by a promissory note, by granting M a mortgage on O's land.  This Article does not apply to the creation of the real-property mortgage.  However, if M sells the promissory note to X or gives a security interest in the note to secure M's own obligation to X, this Article applies to the security interest thereby created in favor of X.  The security interest in the promissory note is covered by this Article even though the

**Memorandum Decision and Order - 5**

> note is secured by a real-property mortgage. Also, X's security interest in the note gives X an attached security interest in the mortgage lien that secures the note and, if the security interest in the note is perfected, the security interest in the mortgage lien likewise is perfected..

I.C. § 28-9-109, Official Comment 7, Example 1.

Accordingly, the Moore Note, offered as security by the Blewetts in favor of PENSCO (originally IRA Resource), is governed by Title 28, Chapter 9, Idaho Code.

**C. PENSCO Is Not Required to Pursue Collateral Before Suing the Debtors and the Guarantor.**

The Blewett Defendants contend that the relief PENSCO seeks is not available in this case because PENSCO did not act in a "commercially reasonable" manner by not first seeking to recover against the purported underlying collateral, *e.g.*, the Moore Note and Moore Deed of Trust.

The Blewett Defendants rely upon Idaho Code section 28-9-607(c), which prescribes that a secured party shall proceed in a commercially reasonable manner if the secured party: "(1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and (2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor." Here, PENSCO is not collecting from or enforcing obligations of an account debtor. Comment 9 to section 28-9-607 further clarifies this distinction: "[s]ubsection (c) provides that the secured party's collection and enforcement rights under subsection (a) must be exercised in a commercially reasonable manner. These rights include the rights to settle and compromise claims against the account debtor."

Further, the other statutes cited by the Blewetts, Idaho Code sections 28-9-625 and 28-9-626, are off-shoots of section 28-9-607. If a secured party fails to act in a commercially

**Memorandum Decision and Order - 6**

reasonable manner pursuant to section 28-9-607(c), then it may be liable to an aggrieved party under section 28-9-625[2] and the secured party's recovery of a deficiency would be subject to section 28-9-626.[3] However, the predicate of sections 28-9-625 and 28-9-626 is that the secured party has failed to act in a commercially reasonable manner towards the collateral. If the secured party has not proceeded against the collateral at all, as is the case here, these sections do not come into play.

It is no doubt more common that a creditor might seek initially to recover against collateral, as the collateral generally exists for just that purpose. The creditor is not *required* to do so, however, as Article 9 provides that after default a secured party "[m]ay reduce a claim to judgment, foreclose or otherwise enforce the claim [or] security interest . . . by any available judicial procedure." I.C. § 28-9-601(a)(1). Therefore, the rules that might otherwise apply to an effort to recover against collateral do not apply to the efforts made by the creditor to recover from some other source, as occurred here.

### D. Idaho's One-Action Rule and Anti-Deficiency Statute Are Not Triggered on these Facts.

The Blewett Defendants raise both Idaho's one-action rule, Idaho Code section 6-101(1), and the anti-deficiency statute, Idaho Code section 45-1512, as affirmative defenses.[4] Under

---

[2] Section 28-9-625 allows a debtor or obligor to recover against a secured party who fails to comply with Article 9, *e.g.*, for failing to proceed in good faith or in a commercially reasonable manner. *See* I.C. § 28-9-625, Official Comment 2.

[3] Section 28-9-626 allows a debtor or obligor to recover against a secured party if a deficiency or surplus is at issue, when the secured party has collected, enforced, disposed of, or accepted the collateral. *See* I.C. § 28-9-616, Official Comment 1.

[4] While raised in their Answer, the Defendants do not address these affirmative defenses in their response to PENSCO's Motion. Because it is not clear whether the Blewetts are conceding these defense, the Court will address them.

**Memorandum Decision and Order - 7**

Idaho's "one-action" rule, to collect on a debt secured by a mortgage (or deed of trust), the mortgage must be foreclosed – the creditor may not simply sue on the debt and collect by execution of judgment.  *See Elliott v. Darwin Neibaur Farms*, 69 F.3d 1035, 1042 (Idaho 2003).  Nonetheless, even if the facts here could be construed to mean that the debt owed to PENSCO was a debt secured by a mortgage rather than an Article 9 security interest, the defense raised does not obtain here – Idaho's one-action rule does not apply to real property located outside the state.  *See* I.C. 6-101(3).[5]

Idaho's anti-deficiency statute, sectoin 45-1512, provides that a foreclosing creditor has three months after a trustee's sale to pursue a deficiency judgment against the borrower-grantor.  I.C. § 45-1512; *see also First Sec. Bank of Idaho, N.A. v. Gaige*, 765 P.2d 683, 685 (Idaho 1988).  But, here again, even if the facts here could be construed to implicate a debt secured by a deed of trust, the real property is located in Arizona and is not subject to Idaho's Trust Deed statutes.  Further, there was no trustee's sale and PENSCO is not seeking to recover a deficiency in any event.  PENSCO is seeking to recover the entire debt, but in a manner different than by seeking to move against the collateral.

### E.   There has Been No Prejudice to the Guarantor

The Defendant guarantor, Bob Blewett, alleges that he has been prejudiced by PENSCO's delay and failure to "do something" with the collateral, the Moore Note and Deed of Trust on the Arizona property.  The Blewett Defendants refer the Court to cases and UCC statutory provisions addressing "commercial reasonableness."

---

[5] Arizona does not have a similar requirement for choosing between foreclosing on property or suing on the debt with respect to Deeds of Trust.  *See Valley Nat. Bank of Arizona v. Kohlhase*, 897 P.2d 738, 740 (Az. Ct. App. 1995).

**Memorandum Decision and Order - 8**

As discussed above, PENSCO elected to proceed directly on the Blewett Note and not against the collateral. Hence, the commercially reasonable provisions are also inapplicable in regard to the claim against the guarantor of the debt. Further, to the extent that Bob Blewett's arguments are intended to raise some sort of estoppel or other equity based defense, the record is simply too barren of sufficient evidence that PENSCO (or Mr. Miller) in any way slept on its or his rights, or somehow affirmatively misled the Defendants. The Court understands perfectly that the Blewett Defendants would much have preferred that PENSCO seek to collect the money owed from some legal action directed at the Arizona real property, rather than from the Blewetts, but the law does not require that PENSCO do so.

### F. Summary Judgment in Favor of PENSCO

When suing on a promissory note, the initial burden is on the plaintiff to establish, through verified pleadings and exhibits in evidence, the existence of the note, defendant's default, and the amount due. *HICA Education Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, *2 (N.D. Cal. April 6, 2012). *See also U.S. v. Irvy*, 517 F.2d 1042, 1043 (5th Cir. 1975).

PENSCO has adequately shown that Don and Carla Blewett, with Bob Blewett as guarantor, entered into a promissory note for a loan in the amount of $150,000. (McKinley Decl., Ex. A, Dkt. 20-4). PENSCO alleges and has attached two declarations showing that Don and Carla Blewett made only seven payments on the note, with the last payment being made on March 17, 2009. (Complaint, ¶¶ 3.8-3.10; Miller Decl., ¶ 11; McKinley Decl., Ex. B). The Blewetts admit in their Answer that they "failed to perform under terms of [the Note] by failing to make payments." (Answer, ¶ 4.1; *see* Compl. ¶ 4.1). PENSCO has also submitted a declaration

**Memorandum Decision and Order - 9**

attesting to the amount that remains outstanding on the Blewett Note as of December 31, 2012. (McKinley Decl., Ex. C). The total principal owing as of December 31, 2012 is $149,375.17, the amount of accrued interest owing is $69,651.25, for a total of $219,026.42. Additionally, a collection fee of $12.50 was due each month as part of the monthly payment over the 24-month term of the loan. (McKinley Decl., Ex. A). Only 7 of these were paid, leaving 17 collection fees due and owing in the amount of $212.50. (*Id.*)

The guarantor, Bob Blewett, made a promise that binds him to performance in the event of nonperformance of the principal obligors, Don and Carla Blewett. *See Hudson v. Cobbs*, 772 P.2d 1222, 1225 (Idaho 1989). Guarantors are secondarily liable. *Id.* Because Don and Carla Blewett failed to pay on the Blewett Note and have admitted so, Rob Blewett is secondarily liable as guarantor.[6]

Accordingly, PENSCO has shown that there are no genuine issues of material fact as to its right to enforce the Blewett Note as against these Defendants and is entitled to judgement as a matter of law. Plaintiff is directed to submit a proposed judgment within seven days of this Order, supported by sworn declaration or affidavit consistent with the representations in its briefing as to the outstanding principal amount, applicable fees, and accrued interest through the date of judgment. Any claim for fees and costs must be submitted in a manner compliant with applicable statute and court rules.

---

[6] Plaintiff is not entitled, of course, to recover a full judgment amount from Don and Carla Blewett, and then again from Bob Blewett. The proposed judgment should make that limitation clear.

**Memorandum Decision and Order - 10**

## ORDER

**IT IS HEREBY ORDERED that** PENSCO Trust Company's Motion for Summary Judgment (Dkt. 20) is **GRANTED**.



DATED:  **June 21, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**Memorandum Decision and Order - 11**